IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) Criminal Case No. 01-321-KI |
| | ) |
| vs. | ) OPINION AND ORDER |
| | ) |
| RITA L. REGALE, aka Rita L. Brunges; DOUGLAS C. FERGUSON; ROBERT J. SKIRVING; and LAURENT E. BARNABLE, aka Larry Barnabe, | ) ) ) ) ) |
| | ) |
| Defendants. | ) |

KING, Judge:

Before the court is the government's Motion to Determine Possible Conflict of Interest in Robert Reid's Continuing Representation of any Defendant (#432).

Page 1 - OPINION AND ORDER

## DISCUSSION

Attorney Robert Reid represented defendant Ziegler (aka Brink) in this action for 18 months until Brink's death. The codefendants requested funds to convert Reid to a "joint defense resource" to perform two functions: (1) research attorney for remaining defense counsel; and (2) historian of Brink's memory of the bank's affairs.

The government is concerned about a possible conflict of interest and sought a hearing under Federal Rule of Criminal Procedure 44(c):

> (c) Inquiry into Joint Representation.
>
> (1) Joint Representation. Joint representation occurs when:
>
> (A) two or more defendants have been charged jointly under Rule 8(b) or have been joined for trial under Rule 13; and
>
> (B) the defendants are represented by the same counsel, or counsel who are associated in law practice.
>
> (2) Court's Responsibilities in Cases of Joint Representation. The court must promptly inquire about the propriety of joint representation and must personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel.

Although Reid would continue in the case without formally representing another individual defendant, I do not agree with defendants that Reid's status would be similar to that of the computer database company, which obviously never had an attorney-client relationship with one of the defendants. I believe that the situation is one governed by Rule 44(c), even though Reid's new role is not attached to a specific defendant.

Attorney-client privilege survives the death of the client, other than an exception for a testamentary dispute. The duty of loyalty also survives. Swidler & Berlin v. United States, 524 U.S. 399 (1998) (communications between attorney and deceased client which were sought by grand jury cannot be disclosed because of the privilege). The court does not have to accept a waiver of a conflict of interest, even if an actual conflict has not arisen. This is because the court cannot predict everything that might occur which could cause relitigation of the case if an unforeseen conflict arises months from now. Wheat v. United States, 486 U.S. 153, 163 (1988) (district court must have substantial latitude in refusing waivers of conflicts of interest, even if no actual conflict exists). Moreover, an indigent defendant does not have the right to counsel of choice. United States v. Stites, 56 F.3d 1020, 1024 (9th Cir.), cert. denied, 516 U.S. 1138 (1996).

The government cites Stites in which an attorney represented Stites during the investigation and prior to the indictment, then when Stites absconded, the attorney represented his co-defendant who was also his sister. At the sentencing after the sister's guilty plea, the attorney made out Stites to be "a liar, a thief, and the mastermind of the massive fraud." Id. at 1025. When Stites was apprehended a few years later, he wanted the attorney to represent him. The sister waived her privilege but because of the psychological abuse by her brother, the appellate court found the waiver to be unknowing and involuntary. The appellate court also found that an actual conflict existed because of the successive representation of the co-defendants by the same attorney. "She was bound by her duty to her former client not to enter into a relation where she would, almost by necessity, have to draw on knowledge she had obtained in the earlier relationship." Id. The trial court's disqualification of the attorney was affirmed.

Page 3 - OPINION AND ORDER

I will separately consider the two proposed roles for Reid. As an historian, there is a significant issue about confidential communications Reid received from Brink. Even though Brink was part of the joint representation agreement, he could have revoked his participation at any time. Reid's duty of loyalty to Brink goes beyond the lack of a continuing legal interest in this case. Although the government cannot now imprison Brink, his reputation is still at stake and civil claims could be filed against his estate.

As a research attorney, the benefit of using Reid, rather than another local attorney, is because of his familiarity with the facts of the case. But this would also require him to draw on knowledge learned while representing Brink. Thus, the research role actually melds into the historian role and poses the same problems.

The government raises the concern that the codefendants may start pointing their fingers at Brink as a main part of their defense. Although it is argued that Brink told Reid that he (Brink) was responsible for the predicament of the others and would testify accordingly, there is no way to know if Brink would have left the joint defense agreement and backed away from this role as trial approached. There is also no way to know if Brink was totally candid with Reid about his conduct. See Wheat, 486 U.S. at 163 ("It is a rare attorney who will be fortunate to learn the entire truth from his own client . . . .").

I am also concerned about the possibility that one of the other defense attorneys may forget the confines of Reid's new role and provide privileged information to Reid, even though he no longer represents a defendant. This would waive the privilege because the information would be given to someone outside the joint defense. This is a particular concern because the

Page 4 - OPINION AND ORDER

other attorneys have shared everything with Reid for many months, a habit that may be hard to break.

During the hearing, I conducted a colloquy with the other codefendants and conclude that they all knowingly and voluntarily waived any potential conflict of interest. I am concerned, however, that if this case is not resolved to their satisfaction, codefendants may become unhappy with their attorneys and either seek new counsel or file later claims for ineffective assistance of counsel based on Reid's continued role.

After weighing the benefits versus the possible problems, I believe that the benefits are not significant enough to take the chance of a possible conflict arising or a privilege being waived. This is particularly true in light of the time required to prepare this case for trial.

## CONCLUSION

I conclude that the situation creates a serious potential for a conflict of interest and disqualify Reid from further work on this case.

IT IS SO ORDERED.

Dated this ___14th___ day of March, 2006.

                                            /s/ Garr M. King
                                          Garr M. King
                                          United States District Judge